David V. Jafari (CA SBN 207881)
djafari@jafarilawgroup.com
Saul Acherman (CA SBN 288036)
sacherman@jafarilawgroup.com
**JAFARI LAW GROUP, INC.**
18201 Von Karman Ave. Suite 1190
Irvine, CA 92612
Tel.: (949) 362-0100

Attorneys for Plaintiff
SHAVINA LUCKETT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHAVINA LUCKETT, an individual,

Plaintiff,

vs.

KOHL'S DEPARTMENT STORES, INC., a Delaware corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No.: 5:18-cv-02351-JGB-SHK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Hearing Date: June 1, 2020
Hearing Time: 9:00 AM
Courtroom: 1
Judicial Officer: Hon. Jesus G. Bernal

[*Filed concurrently with Notice of Motion and Motion; Declaration of Shavina Luckett; Statement of uncontroverted facts; Compendium of Exhibits; Proposed Order; Proof of Service*]

Complaint Filed: September 5, 2018
Removed: November 1, 2018
Trial Date: June 23, 2020

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff SHAVINA LUCKETT hereby submits the following memorandum of points and authorities in support of her motion for partial summary judgment:

**Table of Contents**

I. SUMMARY OF THE CASE ........................................................ 6

II. STATEMENT OF FACTS ........................................................ 7

A. Despite being aware that Plaintiff was experiencing a high-risk pregnancy, Defendant refused to accommodate Plaintiff ........................................................ 7

B. Instead of accommodating Plaintiff, after her requests for reasonable accommodations, Defendant began to retaliate against her ........................................................ 8

C. Defendant subjected Plaintiff to racist comments ........................................................ 9

D. Plaintiff complained to Defendant's management but was not helped ........ 9

E. Defendant's termination of Plaintiff's employment was pretextual ............ 9

F. Various of Defendant's policies, at least some of which were used to harass and retaliate against Plaintiff, violate California's Labor Code ................10

III. LEGAL STANDARD ........................................................ 12

IV. ARGUMENT ........................................................ 13

A. The undisputed evidence demonstrates that Defendant failed to provide suitable seating ........................................................ 13

B. The undisputed evidence demonstrates that Defendant failed to provide suitable rest periods ........................................................ 15

C. The undisputed evidence demonstrates that Defendant failed to maintain a reasonably comfortable temperature for all its employees ............................ 17

D. The undisuputed evidence demonstrates that Defendant, routinely, and as a policy, failed to timely pay all wages owed at termination ............................ 19

E. The undisputed evidence demonstrates that Defendant discriminated against Plaintiff because she was experiencing a high-risk pregnancy and Defendant did not want to accommodate her, and further discriminated against her based on race ........................................................ 20

F. The undisputed evidence demonstrates sthat Defendant failed to prevent discrimination ........ 23

G. The undisputed evidence demonstrates that Defendat retaliated against Plaintiff because she opposed Defendant's failure to accommodate her reasonable requests during her high-risk pregnancy and because Plaintiff spoke out about her unlawful treatment ........ 24

H. The undisputed evidence demonstrates that Defendant wrongfully terminated Plaintiff ........ 26

I. The undisputed evidence demonstrates that Defendant regularly engages in unlawful business practices ........ 27

J. The undisputed evidence demonstrates that the State of California and all similarly aggrieved employees are entitled to judgment pursuant to the PAGA ........ 28

1. Defendant's unlawful final paycheck policy was companywide .... 28

2. Defendant's unlawful failure to maintain the Murrieta location at a reasonably comfortable temperature affected all employees ........ 29

3. Defendant's unlawful rest period policy was companywide ........ 29

V. CONCLUSION ........ 30

# Table of Authorities

## Cases


Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781 (N.D. Cal. 2015)........... 23 - 24

Augustus v. ABM Security Services, Inc., 2 Cal. 5th 257 (2016) ........... 15, 16, 17

Ayala v. Frito Lay, Inc., 263 F. Supp. 3d 891 (E.D. Cal. 2017) .......................... 23

Cel-Tech Commc'ns, Inc., 20 Cal. 4th 163 (1999) ............................................. 27

Diaz v. Grill Concepts Services, Inc., (2018) 23 Cal. App. 5th 859 ................... 19

Elliot v. Spherion Pac. Work, LLC, 572 F. Supp. 2d 1169 (C.D. Cal. 2008)...... 30

Farmers Ins. Exch. v. Super Ct., (1992) 2 Cal. 4th 377 (1992)............................ 27

Gallardo v. AT&T Mobility, LLC, 937 F. Supp. 2d 1128 (N.D. Cal. 2013). 13, 14

Grant-Burton v. Covenant Care, Inc., 99 Cal. App. 4th 1361 (2002).................. 26

Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317 (2000)............................................... 21

Harris v. City of Santa Monica, 56 Cal. 4th 203 (2013) ..................................... 26

Jeske v. Maxim Healthcare Services, Inc., No. CV F 11–1838 LJO JLT, 2012 WL 78242 (E.D. Cal. January 10, 2012)............................................................ 18

Johnson v. Hewlett-Packard Co., 572 F. Supp. 2d 1169 (C.D. Cal. 2011).......... 30

Kao v. Holiday, 12 Cal. App. 5th 947 (2017) ...................................................... 19

Kilby v. CVS Pharmacy, Inc., 63 Cal. 4th 1 (2016)....................................... 13, 14

Local TV, LLC v. Super Ct., 3 Cal. App. 5th 1 (2016)................................ 27 - 28

Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090 (N.D. Cal. 2008)......... 27

Ridgeway v. Walmart Inc., 946 F.3d 1066 (2020)........................................ 16, 17

Rieve v. Coventry Health Care, Inc., 870 F. Supp. 2d 856 (C.D. Cal. 2012)...... 30

Smith v. Super Ct., 39 Cal. 4th 77 (2006) ........................................................... 19

T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626 (9th Cir. 1987) ........................................................................................................ 12 - 13

Varsam v. Laboratory Corp. of America, 120 F. Supp. 3d 1173 (S.D. Cal. 2015)28

Whitworth v. SolarCity Corp., 336 F. Supp. 3d 1119 (N.D. Cal. 2018).............. 28

Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028 (2011). ................................. 25

Yau v. Santa Margarita Ford, Inc., 229 Cal. App. 4th 144 (2014)....................... 26

## Statutes

42 U.S.C. § 2000e-3. .................... 24
Cal. Bus. & Prof. Code § 17200 – 17210 .................... 27
Cal. Gov't Code § 12940 .................... 21, 23, 24, 26
Cal. Gov't Code §12920 .................... 26
Cal. Lab. Code § 1102.5 .................... 24
Cal. Lab. Code § 201 .................... 19, 20, 29
Cal. Lab. Code § 203 .................... 19
Cal. Lab. Code § 226.7 .................... 15
Cal. Lab. Code § 2698 – 2699.6 .................... 28
Cal. Lab. Code § 2699.3 .................... 28
Cal. Lab. Code § 2699.5 .................... 28
Fed. R. Civ. P. 56 .................... 12

## Regulations

8 CCR § 11040 .................... 14, 18
8 CCR § 11070 .................... 13, 15, 17

## I. SUMMARY OF THE CASE

Plaintiff SHAVINA LUCKETT (hereafter "Plaintiff") was hired by Defendant KOHL'S DEPARTMENT STORES, INC. (hereafter "Defendant") as a cashier in July 2016 [SUF No. 1]. Throughout the course of Plaintiff's employment, she endured much unlawful and discriminatory treatment at the hands of Defendant, as well as wage-and-hour violations as a result of Defendant's unlawful companywide policies.

Plaintiff complained to Defendant's management about this treatment, including writing a letter to the store manager [SUF Nos. 77 – 78]. Although Plaintiff's concerns went unheeded and unaddressed, she continued to speak out against Defendant's unlawful activities, until Defendant finally terminated her in May 2018 on the grounds that she had allegedly misused a number of Defendant's coupons and employee discounts [SUF No. 56]. Even Defendant's store manager at the Murrieta location believes Defendant's discount policy and coupon policy are arbitrary and easy to violate. [SUF No. 70]. Moreover, the same store manager, who was the store manager during Plaintiff's employment, believes there were instances in which Defendant "wanted to get rid of [an employee] and used [Defendant's arbitrary policies] as a vehicle to do that." [SUF No. 71].

The undisputed facts show that Defendant's stated reasons for terminating Plaintiff were a mere pretext to get rid of her in retaliation for her multiple complaints about Defendant's discriminatory treatment and wage-and-hour violations. The undisputed facts also show that Defendant violated California's Labor Code by failing to provide suitable seating, failing to provide suitable rest periods, failing to maintain reasonably comfortable temperature for all its employees, and routinely, and as a policy, failing to timely pay all wages due upon termination.

Accordingly, Plaintiff requests that judgment be granted against Defendant as a matter of law on the causes of action enumerated below.

## II. STATEMENT OF FACTS

Plaintiff Shavina Luckett is an African American woman who was employed by Defendant as a cashier from July 2016 to June 2018 at Defendant's location in Murrieta, California (hereafter "Murrieta location") [SUF Nos. 1, 3]. Despite Plaintiff's being seen as an intelligent and good worker, and getting along well with customers and coworkers alike [SUF Nos. 66 - 69], certain of Defendant's managers at the Murrieta location discriminated against her, and harassed her up to the point of terminating her, in part because they were inconvenienced by her requests for reasonable accommodations in view of her high-risk pregnancy and because they were upset at her complaining about Defendant's unlawful employment practices. When Plaintiff complained to Defendant's store manager Tony Meyer (hereafter "Mr. Meyer") about the lack of accommodation, Defendant responded by forcing Plaintiff to remain stationed in the part of the store that was especially hot, denying her the right to sit during her work shifts, and subjecting her to racist comments [SUF Nos. 37, 47; Decl. Luckett ¶ 9]. Ultimately, Defendant devised a plot to accuse Plaintiff of theft in order to justify terminating her so that they would no longer have to deal with her. Defendant used certain discount and coupon policies that are confusing, convoluted, and arbitrary, to claim that Plaintiff violated those policies, as a pretext for her termination.

### A. Despite being aware that Plaintiff was experiencing a high-risk pregnancy, Defendant refused to accommodate Plaintiff.

In or around November 2016 Plaintiff became pregnant – this was her first pregnancy. Plaintiff began experiencing severe cramps while at work, and at one point, reported the pain to her manager who said that she could go home but that she would receive a demerit for leaving early. [SUF No. 4]. Plaintiff left work and went to the emergency room to find out she was in labor; unfortunately, this pregnancy ended in miscarriage [SUF No. 4]. The store manager, her supervisors, human resources, and her other colleagues at work were well aware about her

miscarriage. [SUF Nos. 4, 5, 7]. Although losing her baby was devastating to Plaintiff, she was delighted to become pregnant again in 2017. Plaintiff informed everyone at work that she was again pregnant - the store manager, her supervisors, human resources, and her other colleagues at work were well aware about her second pregnancy; they were also aware that her pregnancy was a high-risk pregnancy. [SUF Nos. 4, 5, 7]. Yet, when Plaintiff sought a reasonable accommodation – to sit down while performing her duties as a cashier – she was informed that it was Defendant's policy to require a doctor's note to be able to sit down, regardless of her experiencing a high-risk pregnancy. [SUF Nos. 42, 44]. Plaintiff provided Defendant with a doctor's note that allowed her to sit during at least 50% of her work shift [SUF No. 45]. However, her reasonable accommodation request was still refused [SUF No. 47]. Instead, Defendant's Human Resources, Pamela Hogg (hereafter "Ms. Hogg"), reduced Plaintiff's scheduled hours and required her to go back to her doctor and obtain a note that allowed her more time to stand [SUF No. 46]. Even after Plaintiff obtained a second doctor's note, Defendant still refused to let her sit [SUF No. 47]. Plaintiff had to resort to sitting down whenever management was not around her work area. [SUF No. 47].

**B. Instead of accommodating Plaintiff, after her requests for reasonable accommodations, Defendant began to retaliate against her.**

Plaintiff's reasonable requests for seating induced Defendant to retaliate by requiring her to work in unbearably hot conditions. Plaintiff was always kept at the back of the store, which often reached unreasonably high temperatures, especially during the summer months [SUF No. 37]. The excessive heat, combined with Plaintiff's being pregnant, made Plaintiff's experience almost unbearable. Customers and employees alike were aware of the hot temperatures, and complaints from customers and employees were routinely logged so that Defendant was well aware portions of the store were too hot. [SUF Nos. 23, 26 –

29]. Plaintiff asked if she could be rotated to different locations throughout the store, but was not granted this request [SUF No. 37].

**C. Defendant subjected Plaintiff to racist comments.**

Defendant's abuse of Plaintiff also extended to racist and inflammatory comments about her, one of few African American associates at the Murrieta location. On one occasion, Shelly Hunter (hereafter "Ms. Hunter"), the assistant store manager, expressed surprise that Plaintiff could have a light-skinned daughter, even though the child's father, Plaintiff's fiancé Josh Rose (hereafter "Mr. Rose") was white. [Decl. Luckett ¶ 9]. On a different occasion, Ms. Henson made comments – within earshot of Plaintiff – regarding living in the "ghetto." [Decl. Luckett ¶ 9]. This comment made Plaintiff feel extremely uncomfortable and ostracized because the term "ghetto" is often used to describe an underprivileged area of a city, associated with crime and frequently inhabited by minorities.

**D. Plaintiff complained to Defendant's management but was not helped.**

After months of needless harassment and discrimination, Plaintiff spoke with the store manager, Mr. Meyer, and at his request wrote a letter addressed to Mr. Meyer detailing the way she was being treated, and asking for his intervention [SUF Nos. 77 – 79]. Plaintiff hand-delivered the letter to Mr. Meyer's office [SUF No. 78]. Plaintiff's letter to Mr. Meyer further incensed those who were discriminating against her, and they soon found other, more insidious, ways to retaliate and discriminate against her.

**E. Defendant's termination of Plaintiff's employment was pretextual.**

On May 31, 2018 Defendant terminated Plaintiff for allegedly violating a number of Defendant's coupon and discount policies [SUF No. 56]. Defendant claimed that by allowing Mr. Rose to use the "spousal" equivalent of the associate discount, even though he and Plaintiff were not legally married, Plaintiff had violated the associate discount policy [SUF No. 58]. Additionally, Defendant

claimed that Mr. Rose had used a one-time-use coupon multiple times, and that Plaintiff had combined receipts from multiple purchases in order to acquire additional Kohl's Cash credits, something that Defendant's employees were not allowed to do [SUF No. 58]. Plaintiff apologized for the misunderstanding and explained that she had not known about these policies (as there was never any training on them) and certainly had not intended to violate them [SUF No. 74]. This was the first time Plaintiff had ever been reprimanded in any way, or even spoken to, regarding violations of Defendant's policies [SUF No. 65, 66]. Nevertheless, Defendant paid no heed to Plaintiff's explanation, and went through with the termination.

The associate discount and coupon policies were so dizzyingly complex that even Mr. Meyer, the Murrieta store manager, admitted that, "[s]imple would not be something [he] would have ever described it as," [SUF No. 60]. In fact, he still believes Defendant's discount policy and coupon policy are arbitrary and easy to violate. [SUF No. 70]. Moreover, Mr. Meyers admits that there were likely instances in which Defendant has "wanted to get rid of [an employee] and used [Defendant's arbitrary policies] as a vehicle to do that." [SUF No. 71].

In light of Plaintiff's complaints about Defendant's unlawful discrimination and harassment, it is evident that Defendant's decision to terminate Plaintiff was motivated by a desire to eliminate an exemplary employee who felt compelled to speak up in the face of Defendant's violations of her rights. Plaintiff's alleged violation of Defendant's coupon and discount policies was merely a pretext to justify her termination.

**F. Various of Defendant's policies, at least some of which were used to harass and retaliate against Plaintiff, violate California's Labor Code**

Defendant's policy requiring medical notes before allowing employees to sit is in violation of the Labor Code, and in applying the same failed to provide suitable seating to Plaintiff and to other similarly situated employees. Moreover,

Defendant used the violative policy to harass Plaintiff by going as far as requiring her doctor to change the instructions on a medical note, only to nevertheless deny Plaintiff permission to sit, even during a high-risk pregnancy. [SUF Nos. 5, 44-47].

Defendant also has a clear policy of requiring its employees to remain on the store premises, and of prohibiting employees from leaving Kohl's property during rest periods [SUF Nos. 15, 16]. In applying this rest break policy, Defendant failed to provide suitable rest breaks to Plaintiff and to other employees.

Defendant also failed to provide a work environment with a suitable temperature. [SUF Nos. 23 – 38]. Plaintiff was inexplicably forced to work in an area of the store that was known to be unreasonably hot. [SUF Nos. 23, 37]. Moreover, Plaintiff was not the only employee subjected to working in unreasonable temperatures as the store was riddled with temperature problems. [SUF Nos. 23]. Complaints of excessive heat were prevalent every year. For example, on August 8, 2016 a logged complaint states: "The AC in our office and breakroom is not working and we need service." On July 22, 2017, a logged complaint states: "Store is hot … [w]e have had multiple complaints from customers and associates that the customer service side of the store is hotter than the side that the Jewelry department is on. This has been ongoing." A similar complaint was logged on July 25, 2017 including the same concerns. In August 22, 2017, another complaint states: "Store is hot [t]he A/C … is not working." In the summer of 2018, particularly during July and August, similar complaints were logged; one states "Store is hot – Emergency … No air in our building." [SUF Nos. 23]. And while some parts of the store are too hot during the summer time, other parts of the store are too cold. To make matters worse for those in the cold sections, the Murrieta store does not appear to have a heater in the building. [SUF No. 33].

Defendant also has a policy of suspending employees despite having made the decision to terminate them, for the sole purpose of delaying their final wages, which are due upon termination under the Labor Code. [SUF No. 52 - 63]. In

Plaintiff's case, although the decision to terminate was made on May 31, 2018, she was instead suspended for several days without being informed of Defendant's decision to terminate her, and was instead made to wait the several days before letting her know she was terminated. [SUF Nos. 57, 58, 63]. Defendant admits that this policy is in place in order to provide Defendant an adequate time to put together terminated employees' final paychecks, rather than having these prepared on the date of termination, as required by the Labor Code. [SUF No. 53].

Each of these policies – the sitting policy, the rest-break policy, and the policy whereby employees are not informed of their termination, but instead are suspended to allow Defendant to delay payment of all wages due upon termination – are violative of the Labor Code as will be discussed in turn.

## III. LEGAL STANDARD

A party may bring a motion for summary judgment on any claim or defense for which there is no dispute as to the material facts. Fed. R. Civ. P. 56(a). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there are no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Alternatively, Fed. R. Civ. P. 56(a) also authorizes this Court to grant partial summary judgment to Plaintiff as to particular claims or defenses.

> Whether a "genuine" issue can be said to exist with respect to a material fact is often a close question. Clearly, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Rule 56 provides further guidance. If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, . . . the nonmoving party may not rely on the mere allegations in the pleadings in order to

> preclude summary judgment . . . Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing there is a genuine issue for trial." . . . Hence the nonmoving party may not merely state that it will discredit the moving party's evidence at trial and proceed in hope that something can be developed at trial in the way of evidence to support its claim . . . Instead, it must produce at least some "significant probative evidence tending to support the complaint."

T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987, citations omitted).

## IV. ARGUMENT

### A. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT FAILED TO PROVIDE SUITABLE SEATING

Defendant was required to provide Plaintiff with a suitable seat. The Industrial Welfare Commission's Wage Order No. 7-2001 (hereafter "Wage Order No. 7") requires that all working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats. 8 CCR § 11070(14). In Kilby v. CVS Pharmacy, Inc., 63 Cal. 4th 1 (2016), the Supreme Court of California emphasized that the right to a seat depends on the nature of the work, not the nature of the person performing the work. Neither the language of Wage Order No. 7 itself nor the historical focus has ever suggested that the right to sit hinges on anything other than the characteristics of the particular location and the duties associated with it. Kilby, 63 Cal. 4th at 18.

In Gallardo v. AT&T Mobility, LLC, 937 F. Supp. 2d 1128 (N.D. Cal. 2013), the Court held that an allegation that a job can be done sitting is sufficient to state a claim for violation of the seating requirement. In that case, retail sales consultants throughout California – who spent virtually all their time remaining in one spot behind a sales counter – had their seats taken away as part of the

defendant's store remodeling efforts. The defendant moved to dismiss or strike on a number of points, including that the plaintiffs failed to state a claim for violation of the seating requirement in Wage Order No. 4-2001 (8 CCR § 11040, hereafter "Wage Order No. 4") Section 14, because they had not alleged that the entire range of their duties could be done sitting. Gallardo, 937 F. Supp. 2d at 1135. The court was not convinced by this all-or-nothing approach, but instead held that there was nothing in the nature of the job or in any of the individual tasks that needed to be done standing, or that would have been hindered by sitting. Gallardo, 937 F. Supp. 2d at 1136.

As the job of cashier is one that can be done at least in part while sitting, Defendant was required to provide seats for all its cashiers to use at the times when nature of the work reasonably permitted the use of seats, in accordance with the principles outlined above in Kilby and Gallardo. In line with this, Defendant's stated policy was to provide seats for cashiers in accordance with the law [SUF No. 39]. However, in practice – as testified to by Ms. Henson and Ms. Dilworth – Defendant did not encourage cashiers to sit [SUF No. 43]. Cashiers were expected to stand unless there was some specific reason, such as a medical condition, why an individual cashier needed to sit, and cashiers were required to provide a doctor's note before they were allowed to sit [SUF No. 42]. At times there were not even enough seats in place for all the cashiers [SUF Nos. 40, 41].

Defendant's reasoning for the restriction came from a mistaken belief that the seating requirement emanates from the Americans with Disabilities Act and is thus a form of accommodation for disabled employees, rather than an entitlement for all employees. This misunderstanding was made abundantly clear during the deposition of Ms. Henson [SUF No. 39]. In light of this, there can be little doubt that Defendant's seating policy left no room for the Wage Order No. 7 requirement that seats be provided to all working employees when the nature of the work reasonably permits the use of seats.

Plaintiff experienced Defendant's unlawful policy firsthand when she asked for permission to sit due to her pregnancy. Ms. Dilworth, Ms. Henson, Ms. Hunter, Ms. Hogg, and Mr. Meyer knew of Plaintiff's high-risk pregnancies [SUF Nos. 4, 5, 7]. On the occasion of Plaintiff's second pregnancy, Ms. Hogg told her to provide a doctor's note before she would be allowed to sit [SUF No. 44]. Even after Plaintiff provided the requested doctor's note, which allowed her to sit during at least 50% of her work shift, Ms. Hogg still did not allow Plaintiff to sit until she went back to her doctor and acquired a note that would allow standing time that was more in line with Defendant's wishes [SUF No. 45]. For these reasons, the undisputed evidence demonstrates that Defendant had a policy in violation of the Labor Code, and in applying the same failed to provide suitable seating to Plaintiff and to other similarly situated employees.

**B. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT FAILED TO PROVIDE SUITABLE REST PERIODS**

The Labor Code and Wage Order No. 7 require employers to allow their employees to take rest periods, during which employees must not be required to work. Cal. Lab. Code § 226.7; 8 CCR § 11070(12) The courts have expounded on what it means for an employer to not require employees to work during rest periods. In Augustus v. ABM Security Services, Inc., 2 Cal. 5th 257 (2016), security guards brought action against their employer, alleging violations of the rest period law for requiring them to keep their pagers on and to remain ready to answer calls at all times, even during rest periods. The Court found that Wage Order No. 4[1] and Cal. Lab. Code § 226.7 prohibit employers from exercising control over employees during rest periods. Rather, employers must "permit— and [authorize] employees to take—off-duty rest periods. That is, during rest periods employers must relieve employees of all duties and relinquish control over how

[1] Section 12 of Wage Order No. 4 is identical to Section 12 of Wage Order No. 7.

employees spend their time." Augustus, 2 Cal. 5th at 269. In other words, employer control over employees during rest periods is unlawful.

A later Ninth Circuit case explained what constitutes employer control. In Ridgeway v. Walmart Inc., 946 F.3d 1066 (2020), a group of long-haul truck drivers brought action against their employer for a number of wage and hour violations, among them failure to pay for time spent during layovers, time during which the truck drivers were under the employer's control, but not actively working. This control included a prohibition on spending layover time at home without employer approval, even though the layovers frequently lasted as long as ten hours. Ridgeway, 946 F.3d at 1073, 1078.

The Ninth Circuit found that control consists in imposing "meaningful restrictions," or restrictions that are not otherwise inherent in the nature of a rest period and that prevent an employee from using the rest time however he or she would like. Ridgeway, 946 F.3d at 1078 – 1079. This includes imposing arbitrary restrictions on an employee's movement during a rest period. "When an employer directs, commands or restrains an employee from leaving the work place and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control." Ridgeway, 946 F.3d at 1079 (emphasis added). In sum, an employer may not require an employee to remain on the premises, or otherwise restrict the employee's movement, during a rest period.

Here, Defendant had a clear policy of requiring its employees to remain on the store premises, and of prohibiting employees from leaving Kohl's property during rest periods [SUF Nos. 15, 16]. This policy was clearly communicated to employees during initial orientation, when employees were given a document containing the Kohl's Meal and Rest Break Policy, which stated that employees may not leave the premises during rest periods [SUF No. 19]. Defendant's management reviewed this document with new hires [SUF No. 19]. Employees

were required to sign the document [SUF No. 20]. As part of Defendant's rest period policy, employees were not allowed to use their cars to drive off Defendant's premises [SUF No. 18]. Moreover, although there was a convenience store across the street from the Murrieta location, employees were not permitted to cross the street to buy a snack at the convenience store [SUF No. 21]. Rather, employees were encouraged to spend their rest periods in Defendant's breakroom [SUF No. 17]. Employees were permitted to step outside the building and sit on the benches but were not allowed to leave the parking lot [SUF No. 18]. For example, there is an AM/PM gas station across the street from the Murrieta location building, but Defendant restricts associates from going there because it is not considered "onsite." [SUF No. 21]. If an associate does not comply with Kohl's Rest Period Policy and decides to go to the AM/PM gas station across the street, he or she would receive a warning from management. [SUF No. 22].

As the courts have found that employers may not exercise control over employees during rest periods (Augustus, 2 Cal. 5th at 269), and that restraining an employee from leaving the workplace constitutes control (Ridgeway, 946 F.3d at 1079), Defendant's policy of restraining employees from leaving the workplace during rest periods is clearly unlawful. For these reasons, the undisputed evidence demonstrates that Defendant had a policy in violation of the Labor Code, and in applying the same failed to provide suitable rest breaks to Plaintiff and to other similarly situated employees.

### C. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT FAILED TO MAINTAIN A REASONABLY COMFORTABLE TEMPERATURE FOR ITS EMPLOYEES

Wage Order No. 7 requires that the temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed. 8 CCR § 11070(15). While there is little case law on this particular provision of the Industrial Welfare

Commission's labor standards, the elements of a prima facie case for failure to maintain a reasonably comfortable temperature under Wage Order No. 4 (8 CCR § 11040(15))[2] can be inferred from Jeske v. Maxim Healthcare Services, Inc., No. CV F 11–1838 LJO JLT, 2012 WL 78242 at *16 – 17 (E.D. Cal. January 10, 2012). In that case, the Court held that the complaint's temperature claim was inadequate because it merely alleged that the temperature in the employer's workplace required heavy clothing and heaters, but lacked specific facts to demonstrate that the temperature was inadequate, that the employer had any control over the temperature, or that the inadequate temperature affected any employees other than the plaintiff. From this it can be inferred that a claim for violation of the temperature requirement must include specific facts indicating that (1) the temperature in a workplace was inadequate; (2) the inadequate temperature affected employees other than the Plaintiff; and (3) the employer had the ability to maintain a reasonably comfortable temperature, but failed to do so.

Here, all three of the elements listed above are satisfied. The inadequacy of the temperature is evidenced by the fact that both employees and customers complained about the Murrieta location being too hot. [SUF Nos. 23, 26 – 29]. In many instances, body language of customers provided notice to Defendant's employees of the discomfort over the temperature inside the Murrieta location [SUF No. 26]. Customers also directly complained of the temperature within the store. [SUF No. 23]. Ms. Dilworth, Mr. Duvali, Ms. Henson, Ms. Hogg, and Ms. Hunter have themselves written incident reports on the excessive heat inside the Murrieta location [SUF Nos. 27 – 29]. At times, employees placed fans throughout the store to battle the heat [SUF No. 30]. There was no fan in the break room [SUF No. 31], which was where employees were encouraged to take their rest periods [SUF No. 17]. Both Ms. Henson and Ms. Dilworth have testified that the men's

---

[2] Section 15 of Wage Order No. 4 is identical to Section 15 of Wage Order No. 7.

department, which was where Plaintiff worked [SUF No. 37], was especially susceptible to becoming unreasonably hot [SUF No. 25, 36]. Ms. Hunter testified that she had seen an HVAC crew come to the Murrieta location to examine the air conditioning [SUF No. 34]. Despite this, there were no discussions or meetings among the Murrieta location's management regarding the uncomfortable temperature of the store [SUF No. 35]. The excessive heat at the Murrieta location persisted every year and needed to be addressed many times [SUF Nos. 25, 32]. For these reasons, the undisputed evidence demonstrates that Defendant failed to maintain a reasonably comfortable temperature for Plaintiff and other employees at the Murrieta location.

### D. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT ROUTINELY, AND AS A POLICY, FAILED TO TIMELY PAY ALL WAGES OWED AT TERMINATION

Cal. Lab. Code § 201 requires an employer to pay the entirety of a terminated employee's earned and unpaid wages at the time of discharge. Additionally, Cal. Lab. Code § 203 allows for penalties of up to thirty days' worth of wages "'[i]f an employer willfully fails to pay' the employee his full wages immediately (if discharged) or within 72 hours (if he or she quits)." Diaz v. Grill Concepts Services, Inc., (2018) 23 Cal. App. 5th 859, 867. "The plain purpose of sections 201 and 203 is to compel the immediate payment of earned wages upon a discharge." Smith v. Super Ct., 39 Cal. 4th 77, 92 (2006). An employer may not delay payment for several days. Unpaid wages are due immediately upon discharge. This requirement may not be bypassed surreptitiously by internal company policies, or even by industry-wide standards that allow late payment. Kao v. Holiday, 12 Cal. App. 5th 947, 962 (2017). The clear policy of the State of California is that an employer may not wait until after the termination date to pay a discharged employee.

Here, Defendant had a policy of not telling employees right away that they

were being terminated, in order to avoid having to pay them on the date of termination [SUF No. 53]. Defendant would first conduct the DA interview, and then make the employee wait an extra two or three days (telling the employee that he or she was being suspended), before informing the employee that he or she had actually been terminated [SUF No. 59]. Only then would Defendant release the final payment. [SUF No. 53]. Defendant admits that the reason for this delay is to give Defendant time to order the employee's final check [SUF Nos. 53, 59, 62].

This principle was borne out in Plaintiff's case. Ms. Alvarez, Ms. Barajas, and Ms. Hunter conducted Plaintiff's DA interview on May 31, 2018 [SUF Nos. 14, 56]. It was on that same day that the decision was made to terminate Plaintiff [SUF No. 57], and once Plaintiff's loss prevention interview concluded, Ms. Hogg needed to order Plaintiff's final check. [SUF No. 62]. In fact, immediately after the Loss Prevention interview of Plaintiff, Ms. Hunter became aware that Plaintiff was "good-to-go," or terminated. [SUF No. 73]. Accordingly, Defendant was required to give Plaintiff her final check on May 31, 2018. However, Plaintiff was not given her final paycheck until June 2, 2018 [SUF No. 63]. Defendant has violated the Cal. Lab. Code § 201 requirement that a terminated employee receive all earned and unpaid wages at the time of discharge. Defendant was required to give Plaintiff her final check on May 31, 2018, not two days later. For these reasons, the undisputed evidence demonstrates that Defendant had a policy in violation of the Labor Code, and in applying the same failed to timely pay all wages owed at termination.

**E. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT DISCRIMINATED AGAINST PLAINTIFF BECAUSE SHE WAS EXPERIENCING A HIGH-RISK PREGNANCY AND DEFENDANT DID NOT WANT TO ACCOMMODATE HER, AND FURTHER DISCRIMINATED AGAINST HER BASED ON HER RACE**

The Fair Employment and Housing Act (hereafter "FEHA"), prohibits employers from discriminating against employees of a protected class. Cal. Gov't Code § 12940(a). The Supreme Court of California has laid out the elements of a prima facie case for discrimination as follows:

> Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 323 (2000)

Here, Plaintiff is an African American woman, who during her employment with Defendant, experienced two high-risk pregnancies requiring accommodations that were not only reasonable, but medically necessary [SUF Nos. 3, 4, 5, 7]. Plaintiff was seen as intelligent and a good worker, and throughout her two years working for Defendant, got along well with customers and coworkers alike [SUF Nos. 67 – 70]. Yet, Defendant inflicted multiple adverse employment actions upon Plaintiff, including taking away her right to sit until she provided a medical note [SUF No. 44], forcing her to remain stationed in a department that was considerably hotter than the rest of the store [SUF No. 37], cutting her working hours in response to her complaints [SUF No. 84], and finally, terminating her [SUF No. 57].

A clear example of Defendant's discriminatory actions against Plaintiff is Defendant's failure to provide her with seating accommodations upon her request. In violation of the Labor Code requirement mandating seating for employees, in violation of Defendant's own stated policy, and despite fully knowing that Plaintiff not only was pregnant but had a high-risk pregnancy [SUF No. 5], Ms. Hogg required Plaintiff to provide a doctor's note stating her medical condition before she would be allowed to sit on the job [SUF No. 44]. Adding insult to injury, after

Plaintiff provided a note, which prescribed her at least 50% sitting time during her work shift, Ms. Hogg still did not allow Plaintiff to sit [SUF No. 45, 47]. Instead, Ms. Hogg harassed Plaintiff by requiring Plaintiff to either go back to her doctor and acquire a note that would allow standing time that was more in line with Defendant's wishes, or else suffer a cut in her working hours [SUF No. 46].Even after Plaintiff asked her doctor to modify the note, Ms. Hogg still did not allow her to sit [SUF No. 45].

In June 2017 Plaintiff wrote a note to Mr. Meyer detailing the unjust and unlawful treatment she was receiving at the hands of her managers and supervisors [SUF No. 81]. Plaintiff also spoke with Mr. Meyer in person about her concerns, in the parking lot of the Murrieta location [SUF No. 83]. Plaintiff's letter to Mr. Meyer further incensed those who were inflicting the discriminatory treatment on her, and they soon found other, more insidious, ways to retaliate and discriminate against Plaintiff.

In another clear example of discrimination, Plaintiff was always kept at the back of the store, which often reached unreasonably high temperatures, especially during the summer months [SUF No. 77]. The excessive heat, combined with Plaintiff's being pregnant, made Plaintiff's experience almost unbearable. Customers and employees alike were aware of the hot temperatures, and complaints from customers and employees were routinely logged so that Defendant was well aware portions of the store were too hot. [SUF Nos. 23, 27 – 29]. Plaintiff asked if she could be rotated to different locations throughout the store but was not granted this request [SUF No. 37].

In addition to being harassed for merely requesting a seat, and in addition to being continuously station at a location known for being unbearably hot, Plaintiff also endured having to listen to harassing and racist comments from her supervisor Shelly Hunter. On one occasion, Ms. Hunter, an assistant store manager, expressed surprise that Plaintiff could have a light-skinned daughter, even though the child's

father, Plaintiff's fiancé was white. Decl. Luckett ¶ 9. On a different occasion, Ms. Henson complained – within earshot of Plaintiff – of having to live in the "ghetto." Decl. Luckett ¶ 9. This comment made Plaintiff feel extremely uncomfortable and ostracized because the term "ghetto" refers to an underprivileged area of a city, associated with crime and frequently inhabited by minorities.

For these reasons, the undisputed evidence demonstrates that Defendant discriminated against Plaintiff because she was experiencing a high-risk pregnancy and Defendant did not want to accommodate her, and further discriminated against her based on her race.

**F. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT FAILED TO PREVENT DISCRIMINATION**

The FEHA prohibits employers from failing to take all reasonable steps necessary to prevent discrimination from occurring. Cal. Gov't Code § 12940(k). A Defendant fails to prevent discrimination when a plaintiff is subjected to discrimination, harassment or retaliation, which the defendant failed to take all reasonable steps to prevent, and which caused plaintiff harm. Ayala v. Frito Lay, Inc., 263 F. Supp. 3d 891, 905 (E.D. Cal. 2017). Preventing discrimination can take a number of different forms:

> Some examples of "reasonable steps" available to remedy harassment, discrimination, or retaliation under FEHA include "affirmatively raising the subject of harassment, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under California law, and developing methods to sensitize all concerned." …. Other reasonable steps an employer might take include the establishment and promulgation of antidiscrimination policies and the implementation of effective procedures to handle discrimination-related complaints and grievances.

Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015, citation omitted).

Here, Plaintiff reported the discriminatory treatment – specifically Ms. Hogg's actions – to Defendant via verbal discussions as well as a handwritten note that she gave to Mr. Meyer [SUF Nos. 77 – 78]. Shortly after this, Plaintiff went on medical leave due to her pregnancy, which lasted until late December 2017 [SUF No. 6]. After Plaintiff returned to work, from early January 2018 until her termination in May of that year, her working hours were gradually reduced to the point that by April and May 2018 she was only being allowed to work an average of thirteen hours per week [SUF Nos. 76, 84, 85]. In other words, despite Defendant's being put on notice, the discriminatory behavior continued.

Defendant's discriminatory behavior towards Plaintiff culminated in her termination [SUF No. 57]. Accordingly, for the foregoing reasons, the undisputed evidence demonstrates that Defendant failed to prevent discrimination of Plaintiff.

**G. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT RETALIATED AGAINST PLAINTIFF BECAUSE SHE OPPOSED DEFENDANT'S FAILURE TO ACCOMMODATE HER REASONABLE REQUESTS DURING HER HIGH-RISK PREGNANCY, AND BECAUSE PLAINTIFF SPOKE OUT ABOUT HER UNLAWFUL TREATMENT**

The prohibition on employer retaliation against employees is well established in both California law and federal law. The FEHA (Cal. Gov't Code § 12940(h)) prohibits employers from retaliating against employees (including by termination) for opposing any actions prohibited by the FEHA. Cal. Lab. Code § 1102.5 prohibits employers from retaliating against employees for disclosing information about an employer's violation of state or federal statutes or regulations. The United States Code prohibits employer discrimination against employees for opposing unlawful employment practices. 42 U.S.C. § 2000e-3.

A defendant is liable for retaliation when an employee engages in a 'protected activity,' the employer subjects the employee to an adverse employment action, and a causal link existed between the protected activity and the employer's action. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2011).

Here, Plaintiff opposed and reported Defendant's unlawful employment practices, including its violations of California's Labor Code and the FEHA, by speaking with and later writing a note to Mr. Meyer detailing the unjust and unlawful treatment she was receiving at the hands of her managers and supervisors [SUF Nos. 77 – 79]. After Plaintiff complaining of her mistreatment, Defendant subjected her to multiple adverse employment actions, including taking away her right to sit until she provided a medical note [SUF No. 44], forcing her to remain stationed in a department that was considerably hotter than the rest of the store [SUF No. 37], cutting her working hours [SUF No. 84], and finally terminating her [SUF No. 57].

In July 2017, shortly after Plaintiff provided a handwritten note to the store manager detailing Defendant's violations, Plaintiff went on an extended medical leave due to her pregnancy [SUF No. 6]. Upon returning from medical leave, Plaintiff saw a significant cut in her hours [SUF No. 84]. Prior to the note to Mr. Meyer and her medical leave, Plaintiff was given an average of fifteen to twenty hours a week [SUF No. 83]. From the beginning of January 2018 until her termination in May of that year, Plaintiff never again saw a week averaging twenty hours [SUF No. 84]. Towards the end of her time with Defendants, in April and May 2018, Plaintiff was averaging a mere thirteen hours per week [SUF No. 85].

Finally, she was fired for pretextual reasons. Defendant's store manager admits discount policy and coupon policy are arbitrary and easy to violate. [SUF No. 70]. Moreover, Mr. Meyers also admits that there were likely instances in which Defendant has "wanted to get rid of [an employee] and used [Defendant's arbitrary policies] as a vehicle to do that." [SUF No. 71].

For these reasons, the undisputed evidence demonstrates that Defendant retaliated against Plaintiff because she opposed Defendant's failure to accommodate her reasonable requests during her high-risk pregnancy, and because Plaintiff spoke out about her unlawful treatment.

**H. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT WRONGFULLY TERMINATED PLAINTIFF**

The FEHA prohibits employers from terminating employees for opposing any actions prohibited by the FEHA. Cal. Gov't Code § 12940(h). A plaintiff is wrongfully terminated when an employer terminates the plaintiff's employment, the termination was substantially motivated by a violation of public policy, and the discharge caused the plaintiff harm. Yau v. Santa Margarita Ford, Inc., 229 Cal. App. 4th 144, 154 (2014). To establish substantial motivation, the employee must show that "an illegitimate criterion was a substantial factor in the particular employment decision." Harris v. City of Santa Monica, 56 Cal. 4th 203, 232 (2013). Termination of an employee violates public policy when it contravenes a statute that forbids termination in specific instances. Grant-Burton v. Covenant Care, Inc., 99 Cal. App. 4th 1361, 1372 (2002). One such statute is the FEHA, which expressly forbids terminating employees for opposing any actions prohibited by the FEHA. The FEHA declares that it is the public policy of the State of California "to protect and safeguard the right and opportunity of all persons . . . to hold employment without discrimination." Cal. Gov't Code §12920.

Here, Defendant employed Plaintiff from July 2016 to June 2018 [SUF Nos. 1, 14]. Defendant terminated Plaintiff's employment [SUF No. 14]. As stated above in Sections II(B) and IV(G, Plaintiff's termination was motivated by her opposing and reporting Defendant's unlawful business practices and Labor Code violations. As a result of Defendant's termination of her, Plaintiff has suffered extreme mental and emotional distress, as well as loss of income due to a prolonged period of unemployment [SUF Nos. 86 – 87]. For these reasons, the undisputed

evidence demonstrates that defendant wrongfully terminated Plaintiff.

**I. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT REGULARLY ENGAGES IN UNLAWFUL BUSINESS PRACTICES**

The Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 – 17210, hereafter "UCL"), allows a person to bring a civil action for any unlawful, unfair or fraudulent business act or practice. A UCL claim is derivative of a claim for violation of other laws, such as provisions of the Labor Code. "[A]n action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq." Farmers Ins. Exch. v. Super Ct., (1992) 2 Cal. 4th 377, 383 (1992). Moreover, a UCL claim is not limited to a specific, narrow range of business practices. Rather, "[i]ts coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'" Cel-Tech Commc'ns, Inc., 20 Cal. 4th 163, 180 (1999). "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim." Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008). As the provisions of the Labor Code are laws, they may be used as the basis for a UCL claim.

As stated above, Plaintiff is entitled to judgment on her First through Sixth Causes of Action (collectively, "the other causes of action"). As Plaintiff's Eighth Cause of Action for unlawful business practices rests on the other causes of action, Plaintiff is also entitled to judgment on her Eighth Cause of Action. "Because summary judgment in favor of [Plaintiff] was proper on the cause of action that the section 17200 claim 'borrows,' summary judgment is likewise warranted on the unfair business practices claim." Local TV, LLC v. Super Ct., 3 Cal. App. 5th 1, 14 (2016).

**J. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT THE STATE OF CALIFORNIA AND ALL SIMILARLY AGGRIEVED EMPLOYEES ARE ENTITLED TO JUDGMENT PURSUANT TO THE PAGA**

The undisputed evidence demonstrates that the state of California and all similarly aggrieved employees are entitled to judgment pursuant to the Private Attorneys General Act (Cal. Lab. Code § 2698 – 2699.6, hereafter "PAGA"), for defendant's failure to provide suitable seating, failed to provide suitable rest periods, failure to provide a reasonably comfortable temperature, and failure to timely pay all wages owed at termination. The PAGA authorizes aggrieved employees to file a lawsuit to recover civil penalties on behalf of other similarly aggrieved employees and the State of California, for Labor Code violations committed by the employer. The Labor Code sections that fall under PAGA are listed in Cal. Lab. Code § 2699.5, and a cause of action for penalties pursuant to PAGA is derived from an employer's violation of one or more of those sections. Varsam v. Laboratory Corp. of America, 120 F. Supp. 3d 1173, 1180 (S.D. Cal. 2015); Whitworth v. SolarCity Corp., 336 F. Supp. 3d 1119, 1131 (N.D. Cal. 2018). An employer who violates one or more of those sections is liable for civil penalties under the PAGA.

Plaintiff filed her Amended PAGA notice on June 29, 2018 [SUF No. 80]. After waiting the statutory sixty-five days pursuant to Cal. Lab. Code § 2699.3(a)(2)(B), Plaintiff filed her Complaint on September 5, 2018, which included a cause of action for PAGA penalties based on Defendant's violations of the Labor Code [SUF No. 81]. Plaintiff's PAGA cause of action was unchanged in the First Amended Complaint, filed on January 2, 2020 [SUF No. 82].

1. Defendant's unlawful final paycheck policy was companywide

Defendant's practice of not telling employees right away that they were being terminated, in order to avoid having to pay them on the date of termination,

was not limited to Plaintiff, but was a companywide policy [SUF Nos. 52, 59]. The reason for this delay was to give Defendant time to order the employee's final check [SUF No. 53]. Both Ms. Henson and Ms. Hogg have testified that this is Defendant's policy [SUF Nos. 52, 53]. Defendant's unlawful final paycheck policy was a companywide violation of Cal. Lab. Code § 201, and thus falls under the PAGA.

2. Defendant's unlawful failure to maintain the Murrieta location at a reasonably comfortable temperature affected all employees

Defendant's failure to maintain the Murrieta location at a reasonably comfortable temperature affected not only Plaintiff, but all employees who spent time inside the Murrieta location. Defendant's employees at the Murrieta location have complained about the heat in the building [SUF Nos. 23, 27 – 29]. Mr. Duvali, Ms. Dilworth, Ms. Hogg, Ms. Hunter, and Ms. Henson have all written incident reports on the excessive heat inside the Murrieta location [SUF Nos. 27 – 29]. At times, employees needed to place fans throughout the store to battle the heat [SUF No. 30]. There was no fan in the break room [SUF No. 31], which was where employees were encouraged to take their rest periods [SUF No. 17]. Despite this, there were no discussions or meetings among the Murrieta location's management regarding the uncomfortable temperature of the store [SUF No. 35]. Defendant's failure to maintain the Murrieta location at a reasonably comfortable temperature affected not only Plaintiff, but all employees at the Murrieta location, and thus falls under the PAGA.

3. Defendant's unlawful rest period policy was companywide

Defendant had a companywide policy (at least in California) of requiring hourly non-exempt employees to remain on the premises during rest periods. As stated above in IV(F), during initial orientation, Defendant's employees were given a copy of the Kohl's Meal and Rest Break Policy, which stated that they may not leave the premises during rest periods [SUF No. 15]. Defendant's management

reviewed this document with new hires, who were asked to sign it [SUF Nos. 19, 20]. Clearly Defendant's unlawful rest period policy was in writing and was companywide, and thus falls under the PAGA.

4. Retaliation

The provisions of subdivision (a) of Section 2699.3 of the PAGA apply to any alleged violation of the above provisions as well as Section 1102.5 (Retaliation). Cal. Lab. Code § 2699.5.

As stated above, Plaintiff is entitled to judgment on her Third, Fourth, and Sixth Causes of Action. As Plaintiff's Ninth Cause of Action for PAGA penalties rests on those earlier causes, the State of California and all similarly aggrieved employees are entitled to judgment for penalties on Plaintiff's Ninth Cause of Action, as it pertains to the violations enumerated in those earlier causes. Rieve v. Coventry Health Care, Inc., 870 F. Supp. 2d 856, 877 (C.D. Cal. 2012); Johnson v. Hewlett-Packard Co., 572 F. Supp. 2d 1169, 1138 (C.D. Cal. 2011); Elliot v. Spherion Pac. Work, LLC, 572 F. Supp. 2d 1169, 1181 – 82 (C.D. Cal. 2008).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment on her First through Sixth and Eighth through Eleventh Causes of Action and award damages consistent therewith.

Dated: May 4, 2020

Respectfully submitted,

**JAFARI LAW GROUP, INC.**

David V. Jafari
Saul Acherman
*Attorneys for Plaintiff Shavina Luckett*